IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND


RONALD STANLEY, #149200          *
                          Plaintiff,
          v.                     *   CIVIL ACTION NO. RWT-13-370

DR. TEWELDE,                     *
DIVISION OF CORRECTION
                          Defendants.   *
                          *****

## MEMORANDUM OPINION

Plaintiff, Ronald Stanley, filed a 42 U.S.C. § 1983 civil rights complaint on February 1,

2013. (ECF No. 1). As the original complaint was materially incomplete, Plaintiff filed a court-

ordered amended complaint on March 4, 2013. In the Amended Complaint, Plaintiff claims he fell

down steps in January, 2013 at the Baltimore City Correctional Center ("BCCC") and was seen by

Dr. Zerabruck Tewelde ("Tewelde"), who he claims "failed to facilitate [or] render adequate medical

treatment" in part by not taking x-rays of his hip or back. (ECF No. 3.) He also claims that the

Division of Correction ("DOC") denied him meaningful access to medical services and programs.

(*Id.*) Plaintiff asserts that Tewelde had knowledge of his serious medical needs and was aware that a

substantial risk of harm existed. (*Id.*) He alleges that his hip is deteriorating, that he has not seen a

hip specialist since October 25, 2012, and that the DOC has not scheduled him for a necessary hip

replacement procedure. He seeks hip replacement surgery, medical parole or habeas corpus relief,

and compensatory damages.[1]

Both Tewelde and the DOC filed Motions to Dismiss or for Summary Judgment. (ECF Nos.

13 & 24). Plaintiff has filed multiple Oppositions (ECF Nos. 15, 18-20, 27-28, 31) and a Motion to

---

[1] Plaintiff has also filed Supplements to his Complaint, which contain letters to various prison and agency administrators regarding his eligibility for a medical parole and hip replacement surgery and his receipt of hip x-rays. (ECF Nos. 4 & 6).

Appoint Counsel (ECF No. 34).[2] This case may be determined without oral argument. *See* Local Rule 105.6. (D. Md. 2011). For reasons that follow, Defendants' motions, construed as motions for summary judgment, shall be granted. Plaintiff's motion to appoint counsel shall be denied.

## FACTUAL BACKGROUND

Defendant Dr. Zerabruck Tewelde is a physician at the Baltimore City Correctional Center ("BCCC"). The Plaintiff is a sixty-year-old male with a chronic history of hypertension and pain in the left hip. (Tewelde Motion to Dismiss or for Summary Judgment, ECF No. 13, ("Tewelde Mot.") at 5). Exhibits attached to Tewelde's Motion show that Plaintiff had suffered from hip problems for some time. (See, e.g., Tewelde Mot., Ex. 1 at 1, 3-4 (discussing October, 2012 medical visit with pain management specialist regarding steroid injections)).

On December 19, 2012, Tewelde saw Plaintiff in the Chronic Care Clinic ("CCC") for complaints of pain in the left hip. Plaintiff was diagnosed with osteoarthritis and records show that he was instructed on important lifestyle modifications relating to exercise and weight management. (Tewelde Mot., Ex. 1 at 1, 3-4).

Tewelde again saw Plaintiff on January 10, 2013, due to a report that Plaintiff had been pushed, fell down two steps, and had landed on his thigh. Plaintiff reported that he did not feel any worse than before the fall, but he wanted the doctor to note the fall in his record. Tewelde Mot. at 5. Tewelde observed no contusions or injuries. Tewelde states that Plaintiff did not request x-rays, and even if he had, given the lack of clinical findings suggesting an injury, an x-ray would have been

---

[2] On August 29, 2013, Plaintiff filed a Surreply to Defendant Tewelde's Reply, seeking review under Rule 56(f) to include "extraneous" material related to the fall he experienced in January 2013, and a May 31, 2013 consultation with Dr. Jennings. (ECF No. 32). In effect, Plaintiff seeks discovery, which he seemingly claims will show the injury he experienced from the January 2013 fall and Dr. Tewelde's inactions in failing to schedule him for x-rays and follow-up care. Counsel for Defendant Tewelde has filed an Opposition to commencing discovery. (ECF No. 33). The Court will decide the motions based on the record before it and will not permit discovery.

inappropriate. At that visit, Tewelde made an adjustment to the Plaintiff's hypertension medication. (*Id.*, Ex. 1 at 5). On January 21, 2013, Tewelde conducted a follow-up assessment regarding the medication. Plaintiff raised no complaints regarding his hip during this encounter. The Plaintiff was then transferred out of BCCC and Tewelde did not treat Plaintiff again. (*Id.*)

Defendant DOC's Motion for Summary Judgment also thoroughly documents the treatment given to and accommodations made for the Plaintiff. For example, in January 2012, Plaintiff was provided with a lower bunk because of his medical problems. (DOC Motion to Dismiss or for Summary Judgment, ECF No. 24 ("DOC Mot."), Ex. 1 at 70). In June, 2012, Plaintiff received x-rays, treatment and an evaluation. In July, administrators assigned Plaintiff to "feed in" because of his use of a cane, indefinitely excused him from work, and assigned him to bed rest, with no heavy lifting or courtyard and gym activities. (*Id.*, Ex., 1 at 79-80 & 83). Plaintiff was treated at Bon Secours Hospital in September, 2012 and received cortisone injections that fall. (*Id.*, Ex. 1 at 97, 103-113). On December 12, 2012, Plaintiff filed a sick-call request claiming that he needed a hip replacement. (*Id.* at 89). Plaintiff was treated by doctors on February 25, 2013 and March 30, 2013. (*Id.* at 11).

Plaintiff complains that he was deprived of his right to adequate medical treatment and further claims that he has been transferred to an "inappropriate place of confinement."[3] (ECF No. 15). He claims that when confined at the Eastern Correctional Institution-Annex from March through October 2012, he experienced frequent pain in his left hip that made walking difficult. (*Id.*) He states that he was promised transfer to an institution near a hospital in exchange for signing off and dropping Administrative Remedy Procedure grievances. (*Id.*). He complains that after falling

---

[3] Plaintiff complains about exposure to the chemical "deuce/K" and claims that his transfer to BCCC subjected him to a risk of falling because of his inability to negotiate steps at BCCC. (ECF Nos. 15 & 28). He states he should have been transferred to the Jessup Pre-Release Unit which has a unit designated for special needs inmates. (*Id.*).

down steps at the BCCC in January, 2013 he did not receive adequate emergency medical care from Dr. Tewelde as he was not provided x-rays and the medications he was given did not relieve his hip and back pain. Plaintiff alleges that he has not received a pain injection since January, 2013, no follow-up care from his October, 2012 steroid injection, and no further action has been taken despite the degeneration of his hip. (ECF Nos. 15, 20, & 28).

In additional filings, Plaintiff complains that the medical documentation provided by Tewelde is incomplete. He requests records of medical referrals, consults, and medications ordered in May and July of 2013, and medical and incident reports reflecting a fall he took in July, 2013. (ECF No. 27). In an additional Opposition, he states that he continued to complain of pain and reported that his medications did not provide him effective pain management. Plaintiff states that in May and July of 2013, he was handcuffed and forced to walk, causing him to fall. (ECF No. 31).

## STANDARDS OF REVIEW

1.      Motion to Dismiss

A motion to dismiss pursuant to Rule 12(b)(6) tests the sufficiency of a complaint. *Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999). To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotations omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*; *see also Simmons & United Mortg. & Loan Invest,* 634 F.3d 754, 768 (4th Cir. 2011) ("On a Rule 12(b)(6) motion, a complaint must be dismissed if it does not allege enough facts to state a claim to relief that

is plausible on its face.") (quotation and emphasis omitted). "Thus, '[i]n reviewing a motion to dismiss an action pursuant to Rule 12(b)(6) . . . [a court] must determine whether it is plausible that the factual allegations in the complaint are enough to raise a right to relief above the speculative level.'" *Monroe v. City of Charlottesville*, 579 F.3d 380, 386 (4th Cir. 2009) (quoting *Andrew v. Clark*, 561 F.3d 261, 266 (4th Cir. 2009)).

2. Motion for Summary Judgment

Summary judgment should be rendered if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P 56(a); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). "A material fact is one 'that might affect the outcome of the suit under the governing law.'" *Spriggs v. Diamond Auto Glass*, 242 F.3d 179, 183 (4th Cir. 2001) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). Disputes of material fact are genuine if, based on the evidence, "a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248.

To avoid summary judgment, the nonmoving party "may not rest upon the mere allegations or denials of his pleading, but must set forth specific facts showing that there is a genuine issue for trial." *Id*. at 256. While the court must view the evidence in the light most favorable to the nonmoving party, *Francis v. Booz, Allen & Hamilton, Inc.*, 452 F.3d 299, 302 (4th Cir. 2006), it must also "prevent factually unsupported claims and defenses from proceeding to trial," *Drewitt v. Pratt*, 999 F.2d 774, 778–79 (4th Cir. 1993) (quoting *Felty v. Graves–Humphreys Co.*, 818 F.2d 1126, 1128 (4th Cir. 1987)) (internal quotation marks omitted).

## ANALYSIS

The DOC seeks dismissal of the complaint or summary judgment arguing that as a state agency, it is not a "person" under 42 U.S.C. § 1983 and that it is entitled to Eleventh Amendment immunity. The DOC is a state agency operating as a division of the Maryland Department of Safety and Correctional Services. *See* Md. Code. Ann., Corr. Servs., Art., §§ 1-101(g) and 3-201. Neither a state nor an agency of a state is a "person" within the meaning of 42 U.S.C. § 1983. *See Will v. Michigan Dep't of State Police*, 491 U.S. 58, 64-65 & 70-71 (1989). Moreover, state agencies are immune from liability under the Eleventh Amendment from a § 1983 suit in federal court without regard to the nature of the relief sought. *See Pennhurst State School & Hospital v. Halderman*, 465 U.S. 89, 101-01 (1984). Consequently, the complaint against DOC is subject to dismissal on these grounds.

Alternatively, and with regard to the claims raised against Dr. Tewelde, summary judgment is appropriate because of the detailed documentation and medical records before the Court. The Eighth Amendment prohibits "unnecessary and wanton infliction of pain" by virtue of its guarantee against cruel and unusual punishment. *Gregg v. Georgia*, 428 U.S. 153, 173 (1976). "Scrutiny under the Eighth Amendment is not limited to those punishments authorized by statute and imposed by a criminal judgment." *De'Lonta v. Angelone*, 330 F. 3d 630, 633 (4th Cir. 2003). "The Amendment also provides protection with respect to the treatment a prisoner receives in prison and the conditions under which he is confined," and "those conditions include the adequacy of medical care that the prison provides." *Id.* (internal quotations omitted).

In order to state an Eighth Amendment claim for denial of medical care, a plaintiff "must demonstrate that the officers acted with 'deliberate indifference' (subjective) to the inmate's 'serious medical needs' (objective)." *Iko v. Shreve*, 535 F.3d 225, 241 (4th Cir. 2008) (quoting *Estelle v. Gamble*, 429 U.S. 97, 104 (1976)). One acts with deliberate indifference "only when [one] 'knows

of and disregards' the risk posed by the serious medical needs of the inmate." *Id.* (quoting *Farmer v. Brennan*, 511 U.S. 825, 837 (1994)). The test requires "subjective recklessness" in the face of the serious medical condition. *Farmer*, 511 U.S. at 839-40. "True subjective recklessness requires knowledge both of the general risk, and also that the conduct is inappropriate in light of that risk." *Rich v. Bruce*, 129 F. 3d 336, 340 n. 2 (4th Cir. 1997). "Actual knowledge or awareness on the part of the alleged inflicter…becomes essential to proof of deliberate indifference 'because prison officials who lacked knowledge of a risk cannot be said to have inflicted punishment.'" *Brice v. Virginia Beach Correctional Center*, 58 F. 3d 101, 105 (4th Cir. 1995), quoting *Farmer,* 511 U.S. at 844. Even if the requisite subjective knowledge is established, an official may avoid liability "if [he] responded reasonably to the risk, even if the harm ultimately was not averted." *Farmer*, 511 U.S. at 844. Reasonableness of the actions taken must be judged in light of the risk the defendant actually knew of at the time. Inmates do not have a constitutional right to the treatment of their choice, *Dean v. Coughlin*, 804 F.2d 207, 215 (2d Cir. 1986), and disagreements between medical staff and an inmate over the necessity for or extent of medical treatment do not rise to a constitutional injury. *See Estelle*, 429 U.S. at 105-06; *Wright v. Collins*, 766 F.2d 841, 849 (4th Cir. 1985).

There is no dispute that Plaintiff underwent a hip replacement over twenty years ago and suffers from severe degeneration of his hip. However, he has seen a number of medical professionals and received significant medical accommodations on site at various prisons and at the hospital. In addition, during the time he was under the medical care of Dr. Tewelde, Plaintiff saw pain management personnel at the hospital, received x-rays, underwent a cortisone injection, and received pain medications. While Plaintiff may be dissatisfied with the course of treatment and the health care professionals, the care he received met the constitutional requirements. Accordingly, Plaintiff has not demonstrated a violation of his Eighth Amendment rights.

Additionally, many of Plaintiff's claims relate to treatment (or alleged lack of treatment) after he left BCCC and the treatment of Dr. Tewelde.[4] Even though the DOC presented records showing the care he did receive at these times, since the DOC is not an appropriate defendant and since the Plaintiff has shown a documented medical problem, the Court will order the DOC to provide a status report regarding the medical care and housing assignments received by the Plaintiff.

A federal district court's power to appoint counsel in civil actions under 28 U.S.C. § 1915(e)(1) is a discretionary one, and may be considered where an indigent claimant presents exceptional circumstances. *See Cook v. Bounds*, 518 F.2d 779, 780 (4th Cir. 1975); *see also Branch v. Cole*, 686 F.2d 264, 266 (5th Cir. 1982). The question of whether such circumstances exist in a particular case hinges on the characteristics of the claim and the litigant. *See Whisenant v. Yuam*, 739 F.2d 160, 163 (4th Cir. 1984), abrogated on other grounds by *Mallard v. U.S. District Court*, 490 U.S. 296, 298 (1989). Where a colorable claim exists but the litigant has no capacity to present it, counsel should be appointed. *Id.* In this case, there is no indication at this time that the Plaintiff has a colorable claim or that he has not had the capacity to represent himself in this action.

---

[4] To the extent that Plaintiff has attempted to subsequently name the BCCC Warden and Wexford Health Services as Defendants by naming them in his additional filings, leave to amend shall be denied. There is no showing that the Warden was personally involved in Plaintiff's medical care or housing assignment while he was incarcerated at BCCC. Plaintiff has also provided no evidence demonstrating supervisory liability on the part of the Warden. *See* S*haw v. Stroud*, 13 F.3d 791, 799 (4th Cir. 1994); *Miltier v. Beorn*, 896 F. 2d 848, 854 (4th Cir. 1990). Further, no claims may be raised against Wexford, which is a corporate entity and cannot be held liable under 42 U.S.C. § 1983. A private corporation is not liable under § 1983 for actions allegedly committed by its employees when such liability is predicated solely upon a theory of *respondeat superior*. *See Austin v. Paramount Parks, Inc.,* 195 F.3d 715, 727-28 (4th Cir. 1999); *Powell v. Shopco Laurel Co.*, 678 F.2d 504, 506 (4th Cir. 1982); *Clark v. Maryland Dep't of Public Safety and Correctional Services,* 316 Fed. Appx. 279, 282 (4th Cir. 2009).

## CONCLUSION

For the aforementioned reasons, Defendants' motions for summary judgment are granted.

Plaintiff's motion to appoint counsel is denied. The case shall be administratively closed.  A separate

Order follows.


Dated: March 19, 2014                                  _____/s/_____
                                                                    ROGER W. TITUS
                                                         UNITED STATES DISTRICT JUDGE